## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTEN JONES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.:**  2:24-cv-1291 |
| | : | |
| **CONCORDIA LUTHERAN** | : | |
| **MINISTRIES OF PITTSBURGH d/b/a** | : | |
| **CONCORDIA OF THE SOUTH HILLS,** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **Defendant.** | | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Kristen Jones, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Justin Bahorich, Esquire, who dual files the within Complaint in Civil Action against Defendant, Concordia Lutheran Ministries of Pittsburgh, of which the following is a statement:

## PARTIES

1.      Plaintiff, Kristen Jones (hereinafter "Ms. Jones" or "Plaintiff"), is an adult individual who currently resides at 200 Jucunda Street, Pittsburgh, PA 15210.

2.      Defendant, Concordia Lutheran Ministries of Pittsburgh d/b/a Concordia of the South Hills (hereinafter "Concordia" or "Defendant"), is a non-profit corporation with a headquarters located at 134 Marwood Road, Cabot, Pennsylvania 16023.

## JURISDICTION AND VENUE

3.      Jurisdiction is proper as Ms. Jones brings this Charge of Discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.* (hereinafter "Title VII") and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 (hereinafter the "PHRA").

4.      Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b) in that this is the district in which the claims arose.

5.      On September 26, 2023, Plaintiff timely dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

6.      On June 13, 2024, the EEOC issued a Notice of Right to Sue.

7.      Plaintiff has exhausted all her administrative remedies under Title VII.

8.      Plaintiff intends to amend her Complaint to include PHRA claims upon completion of the PHRC's investigation on or before September 20, 2024. *Miller v. City Mission*, 2023 WL 9002732 at *5 (W.D. Pa. Dec. 28, 2023) (citing 43 P.S. § 962(c)(1)).

## FACTUAL ALLEGATIONS

9.      On December 5, 2022, Ms. Jones commenced her employment with Defendant, assuming the role of a Certified Nursing Assistant ("C.N.A.") at its South Hills location.

10.     Throughout the relevant period, Ms. Jones, a highly qualified black woman, consistently demonstrated her capability to fulfill the essential job functions.

11.     There exists a reasonable belief that Defendant harbors a discriminatory animus, as it allows white employees to openly engage in discriminatory practices against its black employees. Furthermore, Defendant fails to take appropriate corrective measures when discriminatory conduct by white employees is reported.

12.     In particular, Defendant was fully aware of the repeated instances wherein C.N.A. Nadezda Prasada (hereinafter "Ms. Prasada") created a hostile work environment for its black employees by making highly racial remarks.

13.     During her tenure with Defendant, Ms. Jones received warnings from her coworkers regarding Ms. Prasada's severe and discriminatory comments about Defendant's black employees, including Ms. Jones, based solely on their race.

14.     On one occasion, Ms. Prasada stated to another black employee, "they [Defendant] keep hiring you black bitches," in reference to Ms. Jones being hired.

15.     On another occasion, Ms. Jones had shown a coworker a picture of her children. It was later discovered by the same coworker that Ms. Prasada had referred to Ms. Jones' children as "n****r children."

16.     On April 25, 2023, at 7:00 pm, Ms. Jones commenced her shift and, in accordance with Defendant policy, requested a report of the previous shift from Ms. Prasada.

17.     Ms. Prasada refused to provide Ms. Jones with the requested shift report, and additionally, informed her that Ms. Jones had not fulfilled the essential job duties during her own shift, placing the responsibility on Ms. Jones to complete them.

18.     Consequently, Ms. Jones, who is of short stature, found herself in the position of having to lift a patient weighing approximately 300 pounds without assistance. Given the physical requirements of the task and the need for a Hoyer lift, a device designed for two-person operation, Ms. Jones asked Ms. Prasada for assistance in lifting the patient.

19.     Ms. Prasada refused to assist Ms. Jones and proceeded to scream at her stating, "I'm tired of you n****r bitches."

20.     Ms. Jones attempted to ignore Ms. Prasada's severely racial verbal assaults by continuing to check in on patients. However, Ms. Prasada followed Ms. Jones and continued to scream at her and repeatedly called her a "n****r."

21.     Subsequently, Ms. Jones proceeded to enter her supervisor's office, where she met with Melinda Vetterly (hereinafter "Ms. Vetterly"), to report the incident and apprise her of the intolerable work environment she was experiencing.

22.     Without delay, Ms. Prasada pursued Ms. Jones and physically thrust her into the doorway of Ms. Vetterly's office.

23.     To mitigate the escalating situation, Ms. Jones made the decision to leave the South Hills premises after duly informing Ms. Vetterly of her intention to do so.

24.     Following her departure, Ms. Jones made several attempts to contact Defendant's Scheduler, Sierra LNU ("Ms. Sierra"), whom she directly reported to, in order to notify her of the disturbing incident involving Ms. Prasada.

25.     Ms. Sierra failed to answer any of Ms. Jones's phone calls.

26.     On April 26, 2023, Ms. Sierra inquired of Ms. Jones whether she could work an evening shift. In response, Ms. Jones sent a voice memo to Ms. Sierra, apprising her of the incident that occurred on April 25, 2023, involving Ms. Prasada, and expressly stating her decision not to return to work at Defendant.

27.     In response to Ms. Jones' communication, Ms. Sierra extended her apologies via text message, promising to involve Human Resources ("HR") and informing Ms. Jones that HR would contact her the following day.

28.     On April 28, 2023, Ms. Jones followed up by messaging Ms. Sierra, notifying her that no one from HR had made any attempt to reach out to her.

29.     In light of the failure to investigate Ms. Jones' report of discriminatory comments based on her race, she declared her intent to file a complaint against Defendant.

30.     Subsequently, on May 1, 2023, Ms. Jones received a letter from Defendant's HR manager, Nina Tulli (hereinafter "Ms. Tulli"), acknowledging her verbal resignation as of April 26, 2023.

31.     The letter requested that Ms. Jones provide a written resignation by May 4, 2023. Furthermore, the letter stipulated the termination of all benefits that Ms. Jones had received through Defendant, effective as of April 30, 2023.

32.     Defendant promptly sought Ms. Jones' resignation as an attempt to conceal the openly allowed discrimination, rather than taking appropriate corrective measures concerning Ms. Jones' similarly situated white counterpart, Ms. Prasada.

33.     On May 4, 2023, Ms. Jones visited Defendant to submit her letter of resignation in accordance with Defendant's instructions. The letter of resignation provided a detailed account of the verbal and physical altercation between Ms. Jones and Ms. Prasada.

34.     While at Defendant's premises, Ms. Jones requested Ms. Prasada's last name to facilitate the filing of a police report. However, Defendant declined to provide her with such information.

35.     Ms. Jones once more recounted how Ms. Prasada had called her a "n****r" and asked if Defendant condoned such racially motivated behavior. She stated that she would be filing charges with the Equal Employment Opportunity Commission ("EEOC").

36.     Defendant employees then threatened to call the police if Ms. Jones did not leave.

37.     The HR Advisor, Deborah LNU ("Ms. Deborah"), told Ms. Jones that she was "not allowed on the premises" and that she had "already talked to the Department of Health about you [Ms. Jones]."

38.     Upon information and belief, Ms. Deborah reported Ms. Jones to the Department of Health due to her reports of racial discrimination at Defendant.

39.     Upon information and belief, Defendant failed to  the same action toward Ms. Jones's similarly situated white employee, Ms. Prasada.

40.     Defendant's refusal to investigate Ms. Jones' report of discrimination and failure to take her statement demonstrate that Defendant condoned a racially hostile work environment.

41.     Ms. Deborah then attempted to force Ms. Jones out the door by pushing her chest and yelling, "Go! Out!" in the same aggressive fashion as Ms. Prasada.

42.     On May 5, 2023, Ms. Jones received a letter from Ms. Tulli informing her that she was no longer permitted on the Defendant of South Hills property. The letter stated that if she violated the request, Defendant would call the police and/or take legal action.

43.     It is evident that Defendant permitted discriminatory animus directed at Ms. Jones and other black employees, fostering a hostile work environment due to Ms. Prasada's severe racial comments.

44.     Additionally, Defendant failed to take appropriate corrective action against employees who engaged in race-based discrimination and retaliated against those who reported incidents of discrimination and/or a hostile work environment.

45.     In so doing, Defendant encouraged and forced Ms. Jones to resign.

**COUNT I**
**RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII**

46.     Ms. Jones incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

47.     Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. §2000e-2(a)(1).

48.     When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck & Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 36 L. E.D. 29 668 (1973).  See also *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

49.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

50.     In *Muldrow v. City of St. Louis*, the United States Supreme Court held that a Plaintiff claiming discrimination can establish an adverse employment action through evidence of "***some injury*** respecting her employment terms or conditions" and that the injury "left her worse off, but need not have left her ***significantly so***." 601 U.S. 346, 359 (2024) (emphasis added).

51.     Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Morales v. PNC Bank, N.A.*, 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

52.     Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same

standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id.*

53.     Ms. Jones is black female and therefore a member of a protected class under Title VII.

54.     Ms. Jones was always highly qualified for her position while employed by Defendant as she successfully completed the duties of her position as a Certified Nursing Assistant.

55.     Ms. Jones was subject to severe racial discrimination and harassment by employees of Defendant including but not limited to Ms. Prasada calling her "n****r and physically attacking her.

56.     Despite Ms. Jones' reports of Ms. Prasada's severe racial behavior, Defendant failed and refused to take corrective action.

57.     In response, on April 26, 2023, Defendant asked Ms. Jones to turn in her resignation instead of investigating her claims of Ms. Prasada's severe racial behavior. Defendant did not ask Ms. Prasada (similarly situated white employee) for her resignation nor did it terminate Ms. Prasada's employment.

58.     As set forth hereinabove, Defendant's actions were knowing, willful, intentional, and done with reckless indifference to the rights of Ms. Jones.

59.     As a direct and proximate result of the aforementioned conduct, Ms. Jones suffered actual damages, including but not limited to, lost wages, emotional distress, anxiety, humiliation, and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Kristen Jones, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant, including, back pay, front pay,

compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

## COUNT II
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

60.     Ms. Jones incorporates the allegations contained in the paragraphs above as fully set forth at length herein.

61.     The protections established by Title VII include "protection against a hostile work environment that is abusive to an employee on the basis of his or her race." *Bryant v. Wilkes-Barre Hops., Co., LLC*, 146 F. Supp. 3d 628, 645 (M.D. Pa. 2015).

62.     In order to establish a hostile work environment claim, a plaintiff must show that: "(1) he suffered intentional discrimination because of race and/or national origin; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of vicarious or Defendant superior liability." *Senador* at *25 (citing *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001)).

63.     The United States Supreme Court "has held that when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII . . . is violated." *Washington v. Martinez*, 2004 U.S. Dist. LEXIS 4325 at *16 - *17 (E.D. Pa. 2004).

64.     Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

9

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Washington* at \*17 - \*18 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993)).

65.   Conditions that create a hostile working environment "may constitute a significant change in benefits and establish the adverse action necessary to state a prima facie case of discrimination." *Washington* at \*17.

66.   Ms. Jones faced a hostile work environment in the form of racially discriminatory treatment, culture, and environment through her employment as she was subjected to severe racial discrimination while employed by Defendant in the form of being called a "n****r" by Ms. Prasada.

67.   This discrimination Ms. Jones endured is surely indicative of a racially discriminatory hostile work environment as Ms. Jones would have been forced to work alongside coworkers who physically attacked and discriminated against her had she returned to work.

68.   Ms. Jones reported this discrimination to the Human Resource Department but was asked to resign in place of corrective action for her similarly situated white counterpart, Ms. Prasada.

69.   The hostile work environment was especially pervasive as Ms. Prasada had referred to Ms. Jones as a derogatory term on multiple occasions.

70.   The detrimental effect experienced by Ms. Jones was reasonable under the circumstances as she has suffered this harassment on the basis of her race.

71.   Ms. Jones' superior was an agent and/or employee of Defendant, therefore was acting on behalf of, and under the authority of the Defendant.

72.   On April 26, 2023, Defendant terminated Ms. Jones' employment when it requested that she turn in her resignation.

73.     As set forth hereinabove, the Defendant's actions were knowing, willful, intentional, and done with reckless indifference to the rights of Ms. Jones.

74.     As a direct and proximate result of the aforementioned conduct, Ms. Jones suffered actual damages, including but not limited to, lost wages, emotional distress, anxiety, humiliation, and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Kristen Jones, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant, including, back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

## COUNT III
## RETALIATION AND WRONGFUL TERMINATION
## IN VIOLATION OF TITLE VII

75.     Ms. Jones incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

76.      To establish a *prima facie* case of retaliation under Title VII, a plaintiff must provide evidence that: (1) he "engaged in activity protected by Title VII"; (2) the employer took an "adverse employment action" against him; and (3) there was a "causal connection" between his "participation in the protected activity and the adverse employment action." *Kengerski v. Allegheny Cty.*, 435 F. Supp. 3d 671, 676 (W.D. Pa. 2020) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006)).

77.     The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

78.     Ms. Jones engaged in the protected activity of reporting an incident of racial discrimination to employees of Defendant. This constituted protected activity.

79.     Upon information and belief, Defendant did not take any corrective action and continued to employ Ms. Prasada.

80.     Following the protected activity, Ms. Jones suffered adverse employment actions in the form of being asked to resign, and being reported to the Department of Health, which jeopardized her nursing license.

81.     Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

82.     As a direct and proximate cause of the aforementioned conduct, Ms. Jones suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Ms. Jones hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including back pay, front pay, compensatory and punitive damages, costs and reasonable attorney's fees.

## COUNT IV
## DISCRIMINATION ON THE BASIS OF RACE
## IN VIOLATION OF THE PHRA

83.     On September 26, 2023, Ms. Jones filed her Charge of Discrimination with the EEOC which also dual-filed with the Pennsylvania Human Rights Commission ("PHRC"). This count has not yet been administratively discharged and will be joined by amendment upon completion of the PHRC's investigation.

## COUNT V
## HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE
## IN VIOLATION OF THE PHRA

84.     On September 26, 2023, Ms. Jones filed her Charge of Discrimination with the EEOC which also dual-filed with the Pennsylvania Human Rights Commission ("PHRC"). This

count has not yet been administratively discharged and will be joined by amendment upon completion of the PHRC's investigation.

**COUNT VI**
**RETALIATION ON THE BASIS OF RACE**
**IN VIOLATION OF THE PHRA**

85.   On September 26, 2023, Ms. Jones filed her Charge of Discrimination with the EEOC which also dual-filed with the Pennsylvania Human Rights Commission ("PHRC"). This count has not yet been administratively discharged and will be joined by amendment upon completion of the PHRC's investigation.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: September 11, 2024                    By:  */s/ Justin M. Bahorich, Esq.*
                                                Justin M. Bahorich (Pa. I.D. No. 329207)

                                                J.P. Ward & Associates, LLC
                                                The Rubicon Building
                                                201 South Highland Avenue
                                                Suite 201
                                                Pittsburgh, PA 15206

                                                *Counsel for Plaintiff*